UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

WALTER LEE CARUTHERS,

    Petitioner,

v.                                            3:91-cv-031

RICKY BELL, Warden,

    Respondent.

**MEMORANDUM**

This is a petition for the writ of habeas corpus brought by a death row inmate. The court denied the petition with respect to Caruthers' conviction for first degree murder, granted the petition with respect to his sentence, and vacated the sentence of death. The matter is before the court on remand from the Sixth Circuit. For the following reasons, Caruthers' claim AA will be **DENIED**.

I.    Factual and Procedural Background

The facts that led to Caruthers' conviction are set forth in detail in the opinion of the Tennessee Supreme Court on direct appeal, *State v. Caruthers*, 676 S.W.2d 935, 937-38 (Tenn. 1984), and summarized by the Tennessee Court of Criminal Appeals in the first post-conviction proceeding:

> Caruthers and his co-defendant, Reginald Watkins, were driving from Columbus, Ohio, to Knoxville, Tennessee, in October 1980, when they picked up two hitchhikers, Wilhelmina Stahl and her brother, George Stahl, just outside Columbus. After they reached Knoxville, Watkins pulled a gun and robbed the Stahls. He and Caruthers forced them into the trunk of the car and drove away. Later, Wilhelmina Stahl was taken from the car, raped, and murdered while George Stahl was still locked in the trunk. George Stahl was eventually taken out of the trunk and beaten up by the two defendants, but he managed to escape temporarily.
>
> Caruthers and Watkins eventually recaptured Stahl, and Caruthers held him down while Watkins repeatedly stabbed him in the throat with a knife. They then held Stahl's head under water until they thought he was dead and left.
>
> George Stahl survived, however, and testified against Caruthers and Watkins at their joint trial. Each defendant accused the other of killing Wilhelmina Stahl. Caruthers was convicted of murder and sentenced to death. Watkins was acquitted of murder, although he was convicted on several other counts.

*Caruthers v. State*, C.C.A. No. 1164, 1988 WL 124013 at \*\*1-2 (Tenn. Crim. App. November 22, 1988), *perm. app. denied, id*. (Tenn. February 27, 1989), *cert. denied*, 491 U.S. 910 (1989).

As stated previously, the court denied the petition with respect to Caruthers' conviction for first degree murder, granted the petition with respect to his sentence, and vacated the sentence of death; the court specifically found that Caruthers was denied the effective assistance of counsel during the penalty phase of his trial. Both Caruthers and respondent filed a notice of appeal. Shortly after the notices of appeal were filed, Caruthers filed a Rule 60(b) motion for relief from judgment. The basis for the motion was the recently

promulgated Rule 39 of the Rules of the Tennessee Supreme Court, which provides as follows:

> In all appeals from criminal convictions or post-conviction relief matters from and after July 1, 1967, a litigant shall not be required to petition for rehearing or to file an application for permission to appeal to the Supreme Court of Tennessee following an adverse decision of the Court of Criminal Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error. Rather, when the claim has been presented to the Court of Criminal Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies available for that claim. On automatic review of capital cases by the Supreme Court pursuant to Tennessee Code Annotated, § 39-13-206, a claim presented to the Court of Criminal Appeals shall be considered exhausted even when such claim is not renewed in the Supreme Court on automatic review.

In his habeas corpus petition, Caruthers alleged 28 claims for relief; he sought a certificate of appealability as to 16 of the claims. Of those, nine had been dismissed as unexhausted and thus procedurally defaulted, either for failure to present the claim to the state courts at all or for failure to present the claim to the Tennessee Supreme Court in an application for permission to appeal. Rule 39 took effect shortly after the court's decision in this case. Caruthers alleged the rule should be applied retroactively and that the court should reconsider those claims deemed unexhausted.

This court determined that the Rule 60(b) motion constituted a second or successive § 2254 petition, which could not be filed in the district court absent an order from the United States Court of Appeals for the Sixth circuit authorizing the district court to consider the petition. The Clerk was directed to transfer the Rule 60(b) motion to the Sixth Circuit.

Based upon intervening law, the Sixth Circuit subsequently remanded the Rule 60(b) motion to this court for disposition.

Upon review, this court concluded that only one claim was deemed unexhausted because, although raised in the trial court and on appeal to the Tennessee Court of Criminal Appeals, it was never presented to the Tennessee Supreme Court. For that reason, the court granted Caruthers' Rule 60(b) motion to the extent the court would consider the following claim on the merits:

> AA. PETITIONER WAS DENIED THE RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AT THE MOTION FOR NEW TRIAL AND ON APPEAL

The parties were then granted leave to file briefing on the merits of Claim AA, which they have done.

II. Discussion

In claim AA, Caruthers alleges that Mr. Ellis rendered ineffective assistance of counsel, both in the motion for new trial and on direct appeal. Caruthers specifically claims that Mr. Ellis failed to develop and present the Cunningham issue either in the motion for new trial or on direct appeal, failed to present racial issues in the motion for new trial or on direct appeal, failed to obtain a complete record regarding the Cunningham issue on direct appeal, and failed to prepare an adequate brief on direct appeal.

In response to Caruthers' Merits Brief, the respondent contends that claim AA is still procedurally defaulted, notwithstanding the provisions of Rule 39, because Caruthers failed

4

to fairly present the factual bases of his claim to the Tennessee state courts. For the most part, and for the following reasons, the court agrees with the respondent. *See, e.g., Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991) ("When a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court."); *Pillette v. Foltz*, 824 F.2d 494, 496 (6th Cir. 1987) (Exhaustion "generally entails fairly presenting the legal and factual substance of every claim to all levels of state court review.").

Caruthers was represented at trial and on appeal by retained counsel Michael Ellis; Watkins was represented by appointed counsel Doug Trant and Mark Stephens. With respect to the Cunningham issue, the following is taken from the court's findings of fact in its ruling on the habeas corpus petition after an evidentiary hearing:

> The parties do not contest the general statement of the facts as summarized by the Tennessee Court of Criminal Appeals in post-conviction proceedings. Caruthers did not deny his presence during the crime, but alleged that Watkins was the one who murdered Wilhelmina Stahl. The theory of Caruthers' defense was that Watkins was the one in control and was the one who raped and murdered Ms. Stahl, while Caruthers was only "along for the ride" and was trying to defuse the situation. Caruthers relied on the fact that the gun used during the criminal episode belonged to Watkins and Watkins was the one who carried the gun.
>
> Initially, Watkins' defense was one of alibi. Just prior to trial, however, Watkins changed his defense to acknowledge his presence during the crime and his culpability for the robbery, but to claim that Caruthers was the individual who raped and murdered Ms. Stahl. In essence, then, Watkins and Caruthers pointed the finger at each other. The jury obviously believed Watkins' version of the events and acquitted him of murder. Caruthers, on the other hand, was convicted and sentenced to death.
>
> ...

According to Mr. Stephens and Mr. Trant, Watkins' initial defense was alibi. They worked extensively trying to develop an alibi for Watkins, but were unable to do so. Mr. Stephens and Mr. Trant confronted Watkins with the results of their investigation and, during an interview with Watkins on the Wednesday before the trial started, changed the defense. The new defense would be that Watkins was present and participated in some aspects of the criminal episode, but was not responsible for Ms. Stahl's murder.

During voir dire, the jurors were questioned as if Watkins would present an alibi defense. Caruthers presented his proof first, after the State rested. Watkins' attorneys reserved their opening statement until the opening of their proof. Thus, Mr. Ellis was not aware that Watkins' attorneys had changed trial strategy until after Caruthers' direct examination.

The change in defense was due, in part, because Mr. Stephens had received information from Detective Herman Johnson, the week before, regarding Michelle Cunningham and her pending criminal complaint against Caruthers. Herman Johnson testified before this court that, while employed as a detective by the Knox County Sheriff's Department in 1980, he investigated an assault and rape against Michelle Cunningham. Subsequently, Ms. Cunningham's mother, Faye Turner, called Detective Johnson about a possible suspect. Ms. Turner had heard about the rape and homicide of Wilhelmina Stahl and thought there might be a connection with her daughter's case. Detective Johnson prepared and sent to Ms. Turner an array of eight photographs. Detective Johnson also stated that, if Mr. Ellis had asked him about his investigation, he would have talked to him about it. Soon after the trial of Caruthers and Watkins commenced, on either the first or second day of trial, Mr. Stephens and Mr. Trant met with Ms. Cunningham.

According to Mr. Stephens and Mr. Trant, the State refused to introduce the proof concerning Ms. Cunningham because they did not believe it to be admissible. At no time during the entire trial did the State mention Ms. Cunningham. The trial court allowed Mr. Trant, however, to ask Caruthers whether he had raped Michelle Cunningham. In addition, Michelle Cunningham was called as a witness by Watkins. The Tennessee Supreme Court summarized this evidence on direct appeal:

> Defendant also insists that the trial court erred in allowing co- defendant Watkins' attorney to question the defendant concerning a prior bad act. The record shows that on cross-examination, Watkins' attorney asked defendant if, in June

6

1980, he had picked up a girl named Michelle Cunningham and her male companion, driven them around, bought them some beer, taken them to a secluded area, put the man in the trunk and raped and severely beat the girl. The defendant answered "No" and no further questions were asked....

During the presentation of co-defendant Watkins' proof, Michelle Cunningham testified that a black man, identified as the defendant, picked up her and her male companion while she was at a telephone booth in Knoxville late at night on June 16, 1980. The three purchased some beer and, after driving around for a while, parked in a remote area of Knox County. The man then pulled a shotgun, put the male companion in the trunk of his car (which was blue in color like defendant's), raped Cunningham, tied her up, kicked her, and hit her numerous times with a tire jack.

*State v. Caruthers*, 676 S.W.2d at 941.

In Mr. Stephens' opinion, the testimony of Michelle Cunningham was the deciding factor in the trial. Mr. Stephens testified that Mr. Ellis was at a loss and disoriented after Ms. Cunningham's identification of Caruthers. Mr. Trant testified that as the trial progressed, Mr. Ellis became more and more disorganized and frustrated, and more and more at a loss of what to do.

Mr. Ellis was attorney of record for Caruthers in the criminal complaint against him regarding Michelle Cunningham. There were numerous court appearances, with the case being continued each time.

Mr. Trant testified that Mr. Ellis was caught off guard when the subject of Michelle Cunningham was brought up and was completely unprepared for argument against the admissibility of the evidence. On the other hand, Mr. Trant agreed that Mr. Ellis tried to keep Michelle Cunningham's testimony from being admitted, arguing the dissimilarity between the two crimes. Moreover, Mr. Trant testified that he argued in good faith that Michelle Cunningham's evidence was admissible and that the trial court ruled on the evidence by applying the law.

Mr. Trant also testified that Mr. Ellis' cross-examination of Michelle Cunningham was completely ineffective. However, he admitted that Mr. Ellis produced a detective to show that Ms. Cunningham's statement to police was

7

different from her trial testimony. In her statement, Ms. Cunningham had described her assailant as having crooked, ugly, green teeth, a long scar on his right arm, and the tattoo of a mermaid under his chin. That description did not match Mr. Caruthers.

...

It was not until the cross-examination of Caruthers, by Watkins' attorneys, that there was any proof that Ms. Stahl had been raped. Mr. Stephens and Mr. Trant had previously filed a motion *in limine*, which was granted, to prevent the State from presenting proof that Ms. Stahl had been raped. Therefore, Caruthers did not mention the rape during his direct examination. On cross-examination, however, Caruthers was asked if he had raped Wilhelmina Stahl, which he denied.

Mr. Stephens made the closing argument on behalf of Watkins. Mr. Stephens testified that he referred to Michelle Cunningham many times and tried to draw a correlation between Ms. Cunningham and Ms. Stahl to suggest to the jury that Caruthers was in charge of both scenarios.

Attorney Richard B. McConnell testified in the state post-conviction hearing that he was associated in the practice of law with Mr. Ellis during the time of the Caruthers' trial. At some time during the trial, he went with Mr. Ellis to interview Michelle Cunningham. According to Mr. McConnell, Mr. Ellis was not pleased with the interview. Mr. McConnell found Ms. Cunningham to be a very forthright young lady in her claim that Caruthers was the one who raped her.

...

E. Michael Ellis testified on behalf of the State during the state post-conviction hearing....

...

According to Mr. Ellis, he was aware of the charges by Michelle Cunningham. However, the first he learned that she would be a witness was when Watkins called her to testify. Mr. Ellis had previously investigated the case and was aware of her descriptions to the police. He felt he cross-examined her to the best of his ability. One point of the cross-examination was the testimony that Caruthers was driving a blue car and the records of the county court clerk showed Caruthers did not own a blue car

8

at that time. Second, her description of her assailant did not match Caruthers, with respect to tattoos and other physical marks.

[Court File No. 287, Memorandum Opinion, pp. 14-30].

In deciding that Mr. Ellis rendered effective assistance of counsel during the guilt phase of Caruthers' trial, the court concluded the following with respect to Mr. Ellis' handling of Ms. Cunningham's testimony:

> As evidence of Mr. Ellis' inability to function as a lawyer, Mr. Trant contends that Mr. Ellis was not prepared to contest the admissibility of Michelle Cunningham's testimony. Mr. Ellis did in fact challenge the admissibility of Ms. Cunningham's testimony. Mr. Trant seems to imply that, had Mr. Ellis been better prepared and/or had he been functioning as a lawyer should, he would have been able to keep the jury from hearing Ms. Cunningham's evidence. Mr. Trant insists, however, that he proffered the evidence in good faith and that the trial court was correct in ruling the evidence admissible. Accordingly, Mr. Trant cannot now claim that Mr. Ellis should have been successful in blocking Ms. Cunningham's testimony without accusing himself, to a degree at least, of bad faith in offering testimony to a trial court.
>
> Mr. Trant also characterized Mr. Ellis' cross-examination of Michelle Cunningham as ineffective. It would not be unreasonable, however, to characterize the cross-examination as trial strategy. When asked whether he had attempted to interview George Stahl prior to trial, Mr. Trant testified one must be very careful with respect to a witness who has suffered a heinous injury. Out of respect for what the witness has gone through, and so as not to offend him, such a witness has to be handled with kid gloves. Michelle Cunningham would have been just such a witness as well. Thus, the court cannot say Mr. Ellis erred by challenging her eyewitness identification through the testimony of Detective Johnson, rather than confronting Ms. Cunningham herself.

[*Id*. at 52].

In his Merits Brief in support of claim AA, Caruthers reiterates his claims that Mr. Ellis failed to conduct an adequate investigation into the Cunningham issue, failed to

adequately cross-examine Ms. Cunningham, failed to determine prior to trial whether the Stated planned to introduce evidence concerning Ms. Cunningham, and failed to research the admissibility of such evidence. The court having previously determined that Mr. Ellis rendered effective assistance of counsel during the guilt phase of Caruthers' trial, the court will not revisit this issue.

Caruthers also contends that Mr. Ellis failed to develop and present the Cunningham issue in either the motion for new trial or on direct appeal. In his motion for new trial, Caruthers through counsel alleged, *inter alia*, the following:

> 7. That the trial court erred in permitting the attorney for Mr. Watkins to question the Defendant, Walter Lee Caruthers, about an alleged act which had occurred four months prior to the events in this case. This testimony was over the objection of the Defendant, Walter Lee CAruthers, and the State.
>
> 8. That the trial court erred in permitting Michele Cunningham to testify against the Defendant, Walter Lee Caruthers, as to an event that occurred four months prior to the events in this case.

[Court File No. 324-1, Exhibits to Merits Brief in Support of Claim A, Exhibit A, Motion for New Trial, pp. 2-3]. Counsel pursued these claims on direct appeal, arguing that the evidence of the rape and assault of Michelle Cunningham should not have been admissible. [*Id.*, Exhibit B, Brief for Appellant, pp. 26-29].

The Tennessee Supreme Court concluded that the claims lacked merit and that the evidence was admissible:

> Defendant also insists that the trial court erred in allowing co-defendant Watkins' attorney to question the defendant concerning a prior bad act. The record shows that on cross-examination, Watkins' attorney asked defendant if,

10

in June 1980, he had picked up a girl named Michelle Cunningham and her male companion, driven them around, bought them some beer, taken them to a secluded area, put the man in the trunk and raped and severely beat the girl. The defendant answered "No" and no further questions were asked. The judge relied on *Jones v. State*, 580 S.W.2d 329, 332 (Tenn.Crim.App.1978) (guilt of rape goes to truthfulness of witness), in permitting these questions under *State v. Morgan*, 541 S.W.2d 385 (Tenn.1976). Taken together *Jones* and *Morgan* support the judge's ruling that the evidence of the prior bad act was admissible for impeachment purposes.

During the presentation of co-defendant Watkins' proof, Michelle Cunningham testified that a black man, identified as the defendant, picked up her and her male companion while she was at a telephone booth in Knoxville late at night on June 16, 1980. The three purchased some beer and, after driving around for a while, parked in a remote area of Knox County. The man then pulled a shotgun, put the male companion in the trunk of his car (which was blue in color like defendant's), raped Cunningham, tied her up, kicked her, and hit her numerous times with a tire jack. When Cunningham finished testifying the judge instructed the jury to consider her testimony only on defendant's credibility and on questions of intent, motive and common scheme or plan. The State had no part in the introduction of this evidence and did not examine either the defendant or Cunningham concerning the attack.

Generally, evidence of the commission of a crime by the accused other than that for which he is being tried is inadmissible. *See, Harrell v. State*, 593 S.W.2d 664 (Tenn.Crim.App.1980). However, such evidence is admissible if it is relevant to some issue at trial. *Collard v. State*, 526 S.W.2d 112 (Tenn.1975). In *Harrell v. State, supra*, as in this case, the defendant claimed he did not share his co-defendant's intent to commit robbery and had no knowledge a robbery was about to be committed although he admitted being present when the robbery was committed. Testimony showing commission of an armed robbery by the defendant and his co-defendant the day before was admitted to show defendant's intent and guilty knowledge. A similar exception regarding intent applies here and the evidence was properly admitted. *See also Thompson v. State*, 171 Tenn. 156, 101 S.W.2d 467, 473 (1937); 2 *Wigmore on Evidence* § 302 (Chadbourn Rev.1979); Paine, *Tennessee Law of Evidence* § 5 (Supp.1981).

*State v. Caruthers*, 676 S.W. 2d at 941.

In the second amendment to his post-conviction petition, Caruthers alleged that Mr. Ellis failed to preserve and present to the Tennessee Supreme Court exculpatory evidence with respect to the testimony of Michelle Cunningham that was discovered after the trial; he did not describe, however, the exculpatory evidence. [Addendum 9, Motion to Amend Petition for Post Conviction Relief, p. 2].

The court has reviewed the transcript of the post-conviction evidentiary hearing [Addenda 2 (vol. 1-3) and 10 (vol. 4-5), pp. 1-414] and finds that there was little mention of the Cunningham issue. Caruthers' wife, Terry Caruthers, testified that she was surprised that the appeal brief did not include information that the charges against Caruthers by Ms. Cunningham had been dropped; Mr. Ellis' law clerk, who was hired to assist Mr. Ellis during Caruthers' trial, testified that he told Mr. Ellis that Mr. Ellis should interview the police about Ms. Cunningham; Mr. Trant testified that he did not tell Mr. Ellis that he was going to call Ms. Cunningham as a surprise witness; and Mr. Ellis was questioned as to his investigation after the trial into the charges against Caruthers by Ms. Cunningham. [*Id.* at 144-45, 202, 225, 327-31, respectively].

In his brief on appeal from the denial of post-conviction relief, Caruthers argued the following:

> Trial counsel evidently evolved a strategy of attacking the co-defendant's alibi and blaming him as the motivating force behind the crime. The anticipated alibi defense failed to materialize and the theory was rendered totally useless when Michelle Cunningham testified about another rape allegedly perpetrated by the Appellant in a manner similar to the instant offense. Trial counsel was warned about the likelyhood [sic] of this eventually [sic] by his then clerk, James Reed. Yet his preparation for trial by all

12

accounts other than his own concentrated upon an attack upon the jury composition.... The evidence of the other rape which destroyed the defense planned by Ellis was apparently unanticipated and Ellis's investigation of the Cunningham rape allegation commenced in mid-trial.... The fact that Appellant's testimony at trial opened the door to the evidence of the Cunningham allegations show Appellant was not prepared to give tesitmony [sic].

[Addendum 11, Brief of Appellant, p. 40].

With respect to Caruthers' claim that he was denied effective assistance on appeal, in the first amendment to his post-conviction petition, Caruthers alleged generally, *inter alia*, that he was denied the effective assistance of counsel on appeal. [Addendum 8, Amendment to Petition for Post-Conviction Relief, pp. 9-10]. In his brief on appeal from the denial of post-conviction relief, Caruthers argued only the following: "Appellant asserts trial counsel was ineffective on appeal for failing to raise issues which are seperately [sic] argued in this brief. The issue of effectiveness in this regard is addressed in the argument of these issues." [Addendum 11, pp. 44-45].

The Tennessee Court of Criminal Appeals did not specifically address the claims that Mr. Ellis failed to preserve and present exculpatory evidence or was ineffective on appeal, but rather held that overall Caruthers received effective assistance of counsel.

> We conclude that the petitioner has failed to show that his attorney's performance, overall, was defective in a constitutional sense. Of course, no effort is perfect, but what deficiencies do appear in this record do not appear to have affected the outcome of the petitioner's trial. Whatever personal or professional problems Ellis may have been facing (or, more accurately, failing to face), he made reasonable strategic choices in his representation of Caruthers. He presented the only realistic defense available under the circumstances, and he made strategic choices that are not subject to "second-guessing" by means of a post-conviction proceeding. Under

13

> *Strickland v. Washington*, 466 U.S. 668 (1984), we find no grounds for relief, based on the allegation of ineffective assistance of counsel.

*Caruthers v. State*, 1988 WL 124013 at *5.

Caruthers now argues, in his Merits Brief in support of claim AA, that Mr. Ellis failed to obtain *Brady* or *Jenks* materials which would demonstrate that Ms. Cunningham's trial testimony was different from her statement to the authorities and thus her identification of Caruthers was unreliable. Those claims, however, were never presented to the Tennessee courts and thus are procedurally defaulted. Caruthers also argues that Mr. Ellis' appellate briefing on the Cunningham issue was ineffective, failed to articulate the correct standard, failed to include in the record those portions of the arguments of counsel that were necessary to meaningfully assess the prejudicial effect of Ms. Cunningham's testimony, and failed to inform the Tennessee Supreme Court that the Cunningham criminal charges were dropped after Caruthers' conviction. Those claims, however, were likewise not presented to the Tennessee courts and thus are procedurally defaulted.

The claims before the court are whether Mr. Ellis rendered ineffective assistance of counsel with respect to the Cunningham issue in the motion for new trial and on appeal. In order to demonstrate ineffective assistance of counsel, Caruthers must show not only that his attorney's representation fell below the standard of competence demanded of attorneys in criminal cases but also that there is a reasonable probability that, but for the attorney's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

In *Strickland v. Washington*, the United States Supreme Court established a two-part standard for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id*. at 687.

Mr. Ellis clearly raised in the motion for new trial the issue whether the testimony of Ms. Cunningham was inadmissible and he pursued that issue on direct appeal. The court finds that Caruthers has failed to demonstrate ineffective assistance of counsel under the standard of *Strickland v. Washington*.

Caruthers also claims that Mr. Ellis failed to present racial issues in the motion for new trial or on direct appeal. According to Caruthers, Mr. Ellis filed motions well before trial which demonstrated his serious concern that Caruthers' jurors would not be indifferent to the race of Caruthers, his wife, and the Stahls. Caruthers claims that Mr. Ellis failed to follow up on his concerns during voir dire in jury selection, and that he failed to preserve the issue of potential racial bias on the part of the jurors in the motion for new trial or on appeal. These claims, however, were never presented to the Tennessee courts and thus are procedurally defaulted.

Caruthers contends that this court should, in its discretion and in service to the administration of justice, reach the merits of the claims that were procedurally defaulted.

Caruthers argues that because his habeas petition was filed prior to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), effective April 24, 1996, the exhaustion requirement is not jurisdictional and thus subject to the court's discretion. This argument ignores the fact that, while perhaps not jurisdictional prior to the AEDPA, the exhaustion requirement is "to be strictly enforced." *Strickland v. Washington*, 466 U.S. at 684 (citing *Rose v. Luncy*, 455 U.S. 509, 515-520 (1982)). Accordingly, the court declines to exercise its discretion and consider the merits of the defaulted claims.

II.     Conclusion

The majority of claims set forth in claim AA were either previously decided by this court or were procedurally defaulted. Caruthers has failed to demonstrate ineffective assistance of counsel with respect to the claims that were exhausted, specifically the presentation of Cunningham issue and the admissibility of Ms. Cunningham's testimony in the motion for new trial and on appeal. Accordingly, Caruthers' claim AA will be **DENIED**.

**AN APPROPRIATE ORDER WILL ENTER**.

s/ Leon Jordan<br>United States District Judge